**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER SPEAKES, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TARO PHARMACEUTICAL INDUSTRIES LTD., MICHAEL KALB, and KALYANASUNDARAM SUBRAMANIAN,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Christopher Speakes ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Taro Pharmaceutical Industries Ltd. ("Taro" or the "Company"), analysts' reports and advisories about the Company, and information readily

1

obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired the publicly traded securities of Taro between July 3, 2014 and September 9, 2016, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4. Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the Company conducts business in this District, the Company has an office in this District, and a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying PSLRA Certification, purchased Taro securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.     Defendant Taro is a pharmaceutical company that offers prescription and over-the-counter pharmaceutical products focusing on primary areas, including topical creams and ointments, liquids, capsules, and tablets in the dermatological and topical, cardiovascular, neuropsychiatric, and anti-inflammatory therapeutic categories. The Company is incorporated in Israel. Taro's subsidiary, Taro Pharmaceuticals, U.S.A., Inc. ("Taro USA"), has an office located in Hawthorne, New York which is registered as the Taro's address in the United States. Taro securities are traded on the New York Stock Exchange ("NYSE") under the ticker symbol "TARO".

8.     Defendant Michael Kalb ("Kalb") has served as Taro's Chief Financial Officer ("CFO") and Chief Accounting Officer ("CAO") from the beginning of the Class Period until his resignation effective June 29, 2016.

9.     Defendant Kalyanasundaram Subramanian ("Subramanian") has been Taro's Chief Executive Officer ("CEO") throughout the Class Period.

10.    Defendants Kalb and Subramanian are sometimes referred to herein as the "Individual Defendants."

11.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

12. Taro is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Taro under *respondeat superior* and agency principles.

14. Defendant Taro and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

15. One of the Company's key product groups is Clobetasol, a generic drug used to treat conditions skin conditions like eczema, dermatitis, psoriasis and vitiligo.

### Materially False and Misleading Statements

16. On July 3, 2014, the Company filed a Form 20-F for the fiscal year ended March 31, 2014 (the "2014 20-F") with the SEC. The 2014 20-F was signed by Defendant Kalb. The

4

2014 20-F also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Kalb and Subramanian attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

17.     The 2014 20-F discussed Taro's competition and drug pricing, stating in pertinent part :

> **Competition and Pricing**
> The pharmaceutical industry is intensely competitive. We compete with the original manufacturers of the brand-name equivalents of our generic products, other generic drug manufacturers (including brand-name companies that also manufacture generic drugs or license their products to other generic drug manufacturers) and manufacturers of new drugs that may compete with our generic drugs. Many of our competitors have greater financial, production and research and development resources, substantially larger sales and marketing organizations, and substantially greater name recognition than we have.
>
> Historically, brand-name drug companies have attempted to prevent generic drug manufacturers from producing certain products and to prevent competing generic drug products from being accepted as equivalent to their brand-name products. We expect such efforts to continue in the future. Also, some brand-name competitors, in an attempt to participate in the generic drug sales of their branded products, have introduced generic equivalents of their own branded products, both prior and subsequent to the expiration of their patents or FDA exclusivity periods for such drugs. These competitors have also introduced authorized generics or generic equivalents of brand-name drug products.
>
> In the United States, we compete with branded pharmaceutical manufacturers such as Bristol-Myers Squibb Company, GlaxoSmithKline Inc., Merck & Co., Inc., Novartis AG, Pfizer Inc., Valeant Pharmaceuticals International, Inc. and Galderma Laboratories, LP., as well as with generic companies such as Teva Pharmaceuticals U.S.A., Mylan Inc., Perrigo Company PLC, Glenmark Generics, Inc., USA. and Sandoz Pharmaceuticals (the generics subsidiary of Novartis). Many of these companies have more resources, market and name recognition and better access to customers than we have. Therefore, there can be no assurance that we can compete successfully with them.
>
> A significant portion of our sales are made to a relatively small number of wholesalers, retail drug chains, food chains and mass merchandisers, which continue to undergo significant consolidation. We face increasing product pricing

pressures as a result of this consolidation as well as the emergence of large buying groups who are able to negotiate price discounts on our products.

In Canada, our competition includes Merck Canada Inc., Pfizer Canada Inc., Janssen Inc., Novartis Pharmaceuticals Canada Inc., GlaxoSmithKline Inc., Valeant Canada, AstraZeneca Canada, Johnson & Johnson Inc., Bayer Inc. and Bristol-Myers Squibb Canada. We also compete with other manufacturers of generic products, such as Apotex Inc., Teva Canada Limited, Mylan Pharmaceuticals ULC, Sandoz Canada Incorporated and Pharmascience Inc.

Depending on the product, pricing in Canada is established by competitive factors or by Canadian provincial formulary price lists published by the Canadian provinces.

In Israel, we compete with Teva Pharmaceutical Industries Ltd., Perrigo Israel Pharmaceuticals Ltd., Dexcel Pharma Israel, and Rafa Laboratories Ltd., among others. In addition, many leading multinational companies, including Bayer AG, Eli Lilly and Company, Merck & Co., Inc. and Pfizer Inc., market their products in Israel.

In Israel, the government establishes the prices for pharmaceutical products as part of a formal review process. There are no restrictions on the import of pharmaceuticals provided that they comply with registration requirements of the Israeli Ministry of Health.

18.     On July 1, 2015, the Company filed a Form 20-F for the fiscal year ended March 31, 2015 (the "2015 20-F") with the SEC. The 2015 20-F was signed by Defendant Kalb. The 2015 20-F also contained SOX certifications signed by Defendants Kalb and Subramanian attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

19.     The 2015 20-F discussed Taro's competition and drug pricing, stating in pertinent part :

**Competition and Pricing**

The pharmaceutical industry is intensely competitive. We compete with the original manufacturers of the brand-name equivalents of our generic products, other generic drug manufacturers (including brand-name companies that also manufacture generic drugs or license their products to other generic drug manufacturers) and manufacturers of new drugs that may compete with our

6

generic drugs. Many of our competitors have greater financial, production and research and development resources, substantially larger sales and marketing organizations, and substantially greater name recognition than we have.

Historically, brand-name drug companies have attempted to prevent generic drug manufacturers from producing certain products and to prevent competing generic drug products from being accepted as equivalent to their brand-name products. We expect such efforts to continue in the future. Also, some brand-name competitors, in an attempt to participate in the generic drug sales of their branded products, have introduced generic equivalents of their own branded products, both prior and subsequent to the expiration of their patents or FDA exclusivity periods for such drugs. These competitors have also introduced authorized generics or generic equivalents of brand-name drug products.

In the United States, we compete with branded pharmaceutical manufacturers such as Bristol-Myers Squibb Company, GlaxoSmithKline Inc., Merck & Co., Inc., Novartis AG, Pfizer Inc., Valeant Pharmaceuticals International, Inc. and Galderma Laboratories, LP., as well as with generic companies such as Teva Pharmaceuticals U.S.A., Mylan Inc., Perrigo Company PLC, Glenmark Generics, Inc., USA. and Sandoz Pharmaceuticals (the generics subsidiary of Novartis). Many of these companies have more resources, market and name recognition and better access to customers than we have. Therefore, there can be no assurance that we can compete successfully with them.

A significant portion of our sales are made to a relatively small number of wholesalers, retail drug chains, food chains and mass merchandisers, which continue to undergo significant consolidation. We face increasing product pricing pressures as a result of this consolidation as well as the emergence of large buying groups who are able to negotiate price discounts on our products.

In Canada, our competition includes Merck Canada Inc., Pfizer Canada Inc., Janssen Inc., Novartis Pharmaceuticals Canada Inc., GlaxoSmithKline Inc., Valeant Canada, AstraZeneca Canada, Johnson & Johnson Inc., Bayer Inc. and Bristol-Myers Squibb Canada. We also compete with other manufacturers of generic products, such as Apotex Inc., Teva Canada Limited, Mylan Pharmaceuticals ULC, Sandoz Canada Incorporated and Pharmascience Inc.

Depending on the product, pricing in Canada is established by competitive factors or by Canadian provincial formulary price lists published by the Canadian provinces.

In Israel, we compete with Teva Pharmaceutical Industries Ltd., Perrigo Israel Pharmaceuticals Ltd., Dexcel Pharma Israel, and Rafa Laboratories Ltd., among others. In addition, many leading multinational companies, including Bayer AG, Eli Lilly and Company, Merck & Co., Inc. and Pfizer Inc., market their products in Israel.

In Israel, the government establishes the prices for pharmaceutical products as part of a formal review process. There are no restrictions on the import of pharmaceuticals provided that they comply with registration requirements of the Israeli Ministry of Health.

20. On June 9, 2016, the Company filed a Form 20-F for the fiscal year ended March 31, 2016 (the "2016 20-F") with the SEC. The 2016 20-F was signed by Defendant Kalb. The 2016 20-F also contained SOX certifications signed by Defendants Kalb and Subramanian attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

21. The 2016 20-F discussed Taro's competition and drug pricing, stating in pertinent part :

> **Competition and Pricing**
> The pharmaceutical industry is intensely competitive. We compete with the original manufacturers of the brand-name equivalents of our generic products, other generic drug manufacturers (including brand-name companies that also manufacture generic drugs or license their products to other generic drug manufacturers) and manufacturers of new drugs that may compete with our generic drugs. Many of our competitors have greater financial, production and research and development resources, substantially larger sales and marketing organizations, and substantially greater name recognition than we have.
>
> Historically, brand-name drug companies have attempted to prevent generic drug manufacturers from producing certain products and to prevent competing generic drug products from being accepted as equivalent to their brand-name products. We expect such efforts to continue in the future. Also, some brand-name competitors, in an attempt to participate in the generic drug sales of their branded products, have introduced generic equivalents of their own branded products, both prior and subsequent to the expiration of their patents or FDA exclusivity periods for such drugs. These competitors have also introduced authorized generics or generic equivalents of brand-name drug products.
>
> In the United States, we compete with branded pharmaceutical manufacturers such as Bristol-Myers Squibb Company, GlaxoSmithKline Inc., Merck & Co., Inc., Novartis AG, Pfizer Inc., Valeant Pharmaceuticals International, Inc. and Galderma Laboratories, LP., as well as with generic companies such as Teva Pharmaceuticals U.S.A., Mylan Inc., Perrigo Company PLC, Glenmark Generics, Inc., USA. and Sandoz Pharmaceuticals (the generics subsidiary of

8

Novartis). Many of these companies have more resources, market and name recognition and better access to customers than we have. Therefore, there can be no assurance that we can compete successfully with them.

A significant portion of our sales are made to a relatively small number of wholesalers, retail drug chains, food chains and mass merchandisers, which continue to undergo significant consolidation. We face increasing product pricing pressures as a result of this consolidation as well as the emergence of large buying groups who are able to negotiate price discounts on our products.

In Canada, our competition includes Merck Canada Inc., Pfizer Canada Inc., Janssen Inc., Novartis Pharmaceuticals Canada Inc., GlaxoSmithKline Inc., Valeant Canada, AstraZeneca Canada, Johnson & Johnson Inc., Bayer Inc. and Bristol-Myers Squibb Canada. We also compete with other manufacturers of generic products, such as Apotex Inc., Teva Canada Limited, Mylan Pharmaceuticals ULC, Sandoz Canada Incorporated and Pharmascience Inc.

Depending on the product, pricing in Canada is established by competitive factors or by Canadian provincial formulary price lists published by the Canadian provinces.

In Israel, we compete with Teva Pharmaceutical Industries Ltd., Perrigo Israel Pharmaceuticals Ltd., Dexcel Pharma Israel, and Rafa Laboratories Ltd., among others. In addition, many leading multinational companies, including Bayer AG, Eli Lilly and Company, Merck & Co., Inc. and Pfizer Inc., market their products in Israel.

In Israel, the government establishes the prices for pharmaceutical products as part of a formal review process. There are no restrictions on the import of pharmaceuticals provided that they comply with registration requirements of the Israeli Ministry of Health.

22. The statements referenced in ¶¶ 16 – 21 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) since 2014 Taro has colluded with other pharmaceutical companies to keep the price of generic products artificially high; (2) the foregoing conduct violated federal antitrust laws; (3) in turn, Taro's revenues during the Class

9

Period were the result of illegal conduct; and (4) as a result, Taro's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

23. On September 9, 2016, the Company filed a Form 6-K with the SEC announcing that its subsidiary, Taro USA, received a subpoena from the U.S. Department of Justice, Antitrust Division (the "DOJ Subpoena"), stating in relevant part:

> On September 8, 2016, Taro Pharmaceuticals, U.S.A., Inc. ("Taro"), as well as two senior officers in its commercial team, received grand jury subpoenas from the United States Department of Justice, Antitrust Division, seeking documents relating to corporate and employee records, generic pharmaceutical products and pricing, communications with competitors and others regarding the sale of generic pharmaceutical products, and certain other related matters.

24. On this news, shares of Taro fell $4.94 per share or almost 4% from its previous closing price to close at $119.42 per share on September 23, 2016, damaging investors.

25. On October 17, 2016, NECA-IBEW Welfare Trust Fund, an employee health and welfare benefit fund, filed an antitrust class action lawsuit in the U.S. District Court for the Southern District of New York against Taro, Taro USA, and several other pharmaceutical companies alleging that they engaged in the price-fixing of Clobetasol since 2014 in violation of the U.S. antitrust laws.[1] According to the lawsuit, the DOJ Subpoena strongly indicates that antitrust offenses occurred and buttress the conclusion that Taro and its co-defendant competitors communicated with respect to the pricing of generic Clobetasol.

26. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

---

[1] The action is styled as *NECA-IBEW Welfare Trust Fund v. Akorn, Inc., et al.*, Case No. 16-cv-08109 (S.D.N.Y.)

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired publicly traded securities of Taro during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

28. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Taro securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Taro or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

30. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

31. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Taro;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused Taro to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

- whether the prices of Taro securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

32. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

33. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Taro securities are traded in efficient markets;
- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NYSE, and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased and/or sold Taro securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

34. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

35. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material

information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

36. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37. This Count is asserted against Taro and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

38. During the Class Period, Taro and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

39. Taro and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Taro securities during the Class Period.

40. Taro and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Taro were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Taro, their control over, and/or receipt and/or modification of Taro allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Taro participated in the fraudulent scheme alleged herein.

41. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Taro personnel to members of the investing public, including Plaintiff and the Class.

42. As a result of the foregoing, the market price of Taro' securities was artificially inflated during the Class Period. In ignorance of the falsity of Taro's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Taro securities during the Class Period in purchasing Taro securities at prices that were artificially inflated as a result of Taro's and the Individual Defendants' false and misleading statements.

43. Had Plaintiff and the other members of the Class been aware that the market price of Taro securities had been artificially and falsely inflated by Taro's and the Individual

Defendants' misleading statements and by the material adverse information which Taro's and the Individual Defendants did not disclose, they would not have purchased Taro's securities at the artificially inflated prices that they did, or at all.

44. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

45. By reason of the foregoing, Taro and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Taro's securities during the Class Period

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

46. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. During the Class Period, the Individual Defendants participated in the operation and management of Taro and conducted and participated, directly and indirectly, in the conduct of Taro's business affairs. Because of their senior positions, they knew the adverse non-public information regarding Taro's business practices.

48. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Taro's financial condition and results of operations, and to correct promptly any public statements issued by Taro which had become materially false or misleading.

49. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which Taro disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Taro to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Taro within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Taro securities.

50.     Each of the Individual Defendants, therefore, acted as a controlling person of Taro. By reason of their senior management positions and/or being directors of Taro, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Taro to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Taro and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

51.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Taro.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.	Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.	Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.


Dated: October 25, 2016	Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

*Counsel for Plaintiff*