**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER SPEAKES, Individually and on Behalf of All Others Similarly Situated, | Case No.: 16-cv-08318-ALC-OTW |
| Plaintiff, | Hon. Andrew L. Carter Jr., U.S.D.J. |
| vs. | Hon. Ona T. Wang, U.S.M.J. |
| TARO PHARMACEUTICAL INDUSTRIES, LTD., MICHAEL KALB, AND KALYANASUNDARAM SUBRAMANIAN, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND AUTHORIZATION TO PROVIDE NOTICE TO THE CLASS**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT .................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.................................................2

ARGUMENT ............................................................................................................5

I.      THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED
        SETTLEMENT.................................................................................................5

II.     NOTICE IS WARRANTED AS THE SETTLEMENT IS FAIR, REASONABLE
        AND ADEQUATE PURSUANT TO RULE 23(e)(2) .....................................7

A.      Lead Plaintiff and Lead Counsel Adequately Represented the Class..................7

B.      The Settlement Is the Result of Arm's-Length Negotiations..............................8

C.      The Relief Provided by the Settlement Is Adequate ..........................................8

        1.      This Settlement Is Well Within the Range of Reasonableness..............8

        2.      The Proposed Process for Distributing Relief to the Class is Effective ...............10

        3.      The Anticipated Attorney's Fees and Expenses Are Reasonable ........12

D.      Class Members Are Treated Equitably Relative to One Another......................12

III.    THE PROPOSED CLASS SATISFIES RULE 23 .........................................13

A.      The Class Satisfies the Requirements of Rule 23(a).........................................13

        1.      The Class Satisfies Numerosity ...........................................................14

        2.      There Are Common Questions of Law or Fact to the Class.................14

        3.      Lead Plaintiff's Claims Are Typical of Those of the Class.................15

        4.      The Lead Plaintiff Will Adequately Protect the Interests of the Class ...............16

B.      The Requirements of Rule 23(b)(3) Are Satisfied ...........................................16

        1.      The Common Questions of Law and Fact Predominate Over Individual
                Questions..............................................................................................17

        2.      A Class Action Is Superior to Other Methods of Adjudication ...........17

C.      Lead Counsel Should Be Appointed Class Counsel Pursuant to Rule 23(g)....19

IV.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE
AND PLAN FOR PROVIDING NOTICE TO THE CLASS ...........................................19

CONCLUSION...........................................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

*Page(s)*

*Cases*

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................................................ 16, 17, 19

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) ...................................................................................... 16

*Christine Asia Co. v. Jack Yun Ma*,
No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)................... 10

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*
*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015)................................................................................. 21

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ...................................................................................... 8

*Dietrich v. Bauer*,
192 F.R.D. 119 (S.D.N.Y. 2000) .............................................................................. 14

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., et al.*,
No. 1:18-cv-00299-AJN, 2022 WL 4136175 (S.D.N.Y. Feb. 14, 2022)................................ 12

*Fleming v. Impax Labs Inc.*,
No. 4:16-cv-06557-HSG)  (N.D. Cal. July 30, 2021)................................................. 9

*In re Adv. Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .............................................................................. 13

*In re Agent Orange Prod. Liab. Litig.*,
818 F.2d 145 (2d Cir. 1987) ..................................................................................... 14

*In re Allergan Generic Drug Pricing Sec. Litig.*,
No. 2:16-cv-09449 (KSH) (CLW) (D.N.J. July 9, 2021) ........................................ 9

*In re Barrick Gold Sec. Litig.*,
314 F.R.D. 91 (S.D.N.Y. 2016) ................................................................................ 7

*In re BHP Billiton Ltd. Sec. Litig.*,
No. 1:16-cv-01445-NRB, 2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019) ................ 12

*In re Broadcom Corp. Sec. Litig.*,
   No. 01-CV-00275-MLR (C.D. Cal. Aug. 1, 2012) ................................................... 11

*In re Citigroup, Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013) ................................................. 12

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................. 7

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018), *aff'd sub nom.*
   *In re Facebook Inc.*, 822 F. App'x 40 (2d Cir. 2020) ............................... 5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ................................................. 15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .......................... 10

*In re Genworth Fin., Inc. Sec. Litig.*,
   No. 1:14-cv-02392-AKH (S.D.N.Y. Nov. 16, 2017) ............................................... 12

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ................................................. 8, 13

*In re Global Brokerage, Inc.*,
   No. 17-CV-916 (RA) (BCM), 2021 WL 1160056 (S.D.N.Y. Mar. 18, 2021),
   *report and recommendation adopted*,
   No. 17-CV-916 (RA) (BCM), 2021 WL 1105367 (S.D.N.Y. Mar. 23, 2021) ................. 14, 15

*In re Livent Corp. Sec. Litig.*,
   Case No. 190501229 (Pa. Com. Pl.) ................................................. 11

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   No. 1:04-cv-08144-CM, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................. 17

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ................................................. 13

*In re Mylan N.V. Sec. Litig.*,
   No. 16-CV-07926 (JPO), 2020 WL 1673811 (S.D.N.Y. Apr. 6, 2020) ................................. 9

*In re Oxford Health Plans, Inc.*,
   191 F.R.D. 369 (S.D.N.Y. 2000) ................................................. 15

*In re Patriot Nat'l, Inc. Sec. Litig.*,
   828 F. App'x 760 (2d Cir. 2020) ................................................. 7

*In re Scor Holding (Switz.) AG Litig.*,
   537 F. Supp. 2d 556 (S.D.N.Y. 2008) ........................................................................ 18

*In re Sundial Growers Inc. Sec. Litig.*,
   No. 1:19-cv-08913-ALC (S.D.N.Y. Oct. 6, 2022) .................................................... 12

*In re Teva Sec. Litig.*,
   No. 3:17-cv-00557 (SRU), 2021 WL 872156 (D. Conn. Mar. 9, 2021) .................................. 18

*In re Teva Sec. Litig.*,
   No. 3:17-cv-00558 (SRU) (D. Conn. Apr. 28, 2022) .................................................. 9

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
   No. 12-cv-04677-YGR (N.D. Cal.) ...................................................................... 11

*In re Veeco Instruments, Inc. Sec. Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2006) ........................................................................ 17

*In re Vivendi Universal, S.A.*,
   242 F.R.D. 76 (S.D.N.Y. 2007), *aff'd sub nom.*
   *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ...................................... 14

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) ........................................................................ 18

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) ........................................................................ 18

*Mayhew v. KAS Direct, LLC*,
   No. 16 CV 6981 (VB), 2018 WL 3122059 (S.D.N.Y. June 26, 2018) .................................... 15

*Moses v. New York Times Co.*,
   79 F.4th 235, 243 (2d Cir. 2023)…………………………………………………………………….8

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ........................................................................... 17

*Roofer's Pension Fund v. Papa ("Perrigo")*,
   333 F.R.D. 66 (D.N.J. 2019) ..................................................................... 16, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ................................................................................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................................. 5

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ............................................................................ 13

*Statutes*

15 U.S.C. § 78u-4(a)(7) ................................................................................................ 20

*Rules*

Fed. R. Civ. P. 16(b) ..................................................................................................... 4

Fed. R. Civ. P. 23(a) ............................................................................................... *passim*

Fed. R. Civ. P. 23(b) ............................................................................................... *passim*

Fed. R. Civ. P. 23(c) ................................................................................................ 6, 19

Fed. R. Civ. P. 23(e) ............................................................................................... *passim*

Fed. R. Civ. P. 23(g) .............................................................................................. 13, 19

S.D.N.Y, Local Civil Rule 23.1 ............................................................................... 20, 21

Lead Plaintiff City of Atlanta Firefighters' Pension Fund,[1] on behalf of itself and the proposed Class (collectively "Plaintiffs"), respectfully submits this memorandum in support of its unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation; (ii) approval of the form, content and manner of providing notice to the Class; (iii) appointing JND Legal Administration ("JND" or the "Claims Administrator") as the claims administrator to administer the notice and claims process; and (iv) setting a date for the Settlement Hearing at which the Court will consider final approval of the Settlement and entry of the proposed Judgment and Lead Counsel's application for an award of attorneys' fees and expenses. Defendants do not oppose the relief requested by this motion and stipulate to entry of the proposed order which is annexed to the Bigin Decl. as Exhibit A.

## PRELIMINARY STATEMENT

Lead Plaintiff and Lead Counsel respectfully submit that the Settlement should be preliminarily approved by the Court. The Settlement provides $36,000,000 in cash to the Settlement Class to resolve all claims against Defendants. This amount represents 29% of Lead Plaintiff's maximum damages as estimated by its expert, which is an outstanding recovery for a securities class action.

Lead Plaintiff seeks preliminary approval of the Settlement so that notice may be provided to the proposed Class and the Settlement Hearing can be scheduled by the Court. Lead Plaintiff respectfully submits that the Settlement warrants preliminary approval because it is an excellent

---

[1] "Lead Plaintiff" or "Atlanta Firefighters" is City of Atlanta Firefighters' Pension Fund. "Defendants" are Taro Pharmaceuticals Industries, Ltd. ("Taro" or the "Company"), Michael Kalb, and Kalyanasundaram Subramanian (the "Individual Defendants"). Defendants and Lead Plaintiff are the "Parties". Any undefined terms have the definitions set forth in the April 10, 2024 Stipulation of Settlement (the "Stipulation"), annexed to the supporting Declaration of Michael S. Bigin as Exhibit 1.

result for the Class, follows many years of discovery and litigation efforts, and is the result of arm's-length negotiations by experienced counsel after a prolonged mediation session and follow-up conferences. Moreover, the Settlement has all the indicia of a fair, reasonable, and adequate settlement pursuant to Rule 23(e).

Entry of the proposed Preliminary Approval Order will begin the process of considering final approval of the Settlement by authorizing notice of the Settlement to members of the Class. A final Settlement Hearing will then be conducted after the Class has been given an opportunity to object or seek exclusion so that the Court can make a final determination as to whether to approve the Settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 27, 2016, Atlanta Firefighters and two competing shareholders moved to be appointed as lead plaintiff pursuant to the Private Securities Litigation Reform Act (PSLRA). ECF No. 13. Atlanta Firefighters had the largest financial interest of any competing movant. The other movants withdrew their motions, and Atlanta Firefighters submitted a letter notifying the Court that its motion to be appointed lead plaintiff and for approval of lead counsel was unopposed (ECF No. 23). The Court appointed Atlanta Firefighters as Lead Plaintiff and its counsel, Bernstein Liebhard, as Lead Counsel on January 23, 2017 (ECF No. 24).

Lead Counsel conducted an exhaustive investigation of the facts on behalf of Lead Plaintiff and the Class, including interviewing former Taro employees and retaining an antitrust expert who performed a detailed analysis of years of price movements for the drugs at issue. After a thorough investigation, on June 19, 2017, Lead Plaintiff filed the Corrected Amended Class Action Complaint (the "Complaint").

The Complaint asserted claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against

the Individual Defendants under Section 20(a) of the Exchange Act on behalf of all persons who purchased Taro common stock on the open market on a United States stock exchange from July 2, 2014 through November 3, 2016, both dates inclusive (the "Class Period"), and who were damaged thereby. ECF No. 36.  Among other things, the Complaint alleged that Defendants made materially false and misleading statements throughout the Class Period, *e.g.*, Taro claimed to compete with manufacturers to generate revenue and sales growth when the Company was price fixing the cost of drugs with other generic drug companies (the "Conspiracy"). This caused the price of Taro common stock to trade at artificially inflated prices. The Class later incurred damages as it was revealed that Taro was being investigated by antitrust regulators, which caused the market to devalue the price of Taro common stock.

On August 2, 2017, Defendants Taro and Kalb wrote the Court to request a pre-motion conference before filing a motion to dismiss the Complaint. ECF No. 39. On August 7, 2017, Lead Plaintiff responded to that letter. ECF No. 40. On September 13, 2017, the Court held a conference to discuss Defendants' request to file a motion to dismiss, which delved into the substantive merits of the Complaint. ECF No. 41. The Court allowed the motion and on October 11, 2017, Defendants Taro and Kalb filed their motion to dismiss the Complaint. ECF No. 45-47. Lead Plaintiff opposed the motion (ECF No. 50), and briefing closed on January 10, 2018, when Defendants Taro and Kalb filed their reply (ECF No. 51).

While Taro and Kalb's motion to dismiss was *sub judice*, on May 24, 2018, Defendant Subramanian filed his motion to dismiss. ECF No. 56-57. Lead Plaintiff also opposed that motion (ECF No. 58).

On September 24, 2018, the Court denied Defendants' motions to dismiss, in part, finding that the Complaint adequately stated certain violations of Sections 10(b) and 20(a) of the Exchange Act. ECF No. 61.

On November 6, 2018, Defendants filed and served their answer to the Complaint and put forth affirmative defenses to the Action. ECF No. 64.

Parties conducted a Rule 26(f) meeting and proposed a case management plan. ECF 67. On February 21, 2019, the Parties updated the Court about ongoing discussions between the Parties to manage the Action efficiently in light of relevant parallel antitrust proceedings. ECF No. 68. Specifically, the Parties discussed the prospect of Defendants producing to Lead Plaintiff certain discovery produced in concurrent multi-district litigation of private antitrust actions concerning, *inter alia*, the same drugs at issue in the Complaint, and many of which underlying cases named Taro's subsidiary (Taro USA Inc.) and Taro's alleged co-conspirators as defendants (the "MDL"). *Id.*

On February 28, 2019, the Parties participated in an initial case management conference before Magistrate Judge Ona T. Wang in accordance with Rule 16(b) of the Federal Rules of Civil Procedure and discussed the prospect of tracking discovery with the MDL. ECF No. 69. Coordinating discovery was negotiated between the Parties in the weeks thereafter. ECF Nos. 70, 72, 74. On April 17, 2019, the Magistrate Judge entered the Stipulated Discovery Order (ECF No. 76). Lead Plaintiff agreed to track its discovery to the discovery in the MDL with certain exceptions. Parties then began discovery, with Lead Counsel reviewing millions of pages of documents as well as numerous deposition transcripts. The Parties updated the Magistrate Judge on the case every ninety days.

Initial settlement discussions took place in late 2020 but they did not produce an acceptable result. Discovery continued and Parties later agreed to attempt to mediate the case in 2023. On August 2, 2023, the Parties participated in an all-day mediation with David Murphy of Phillips ADR. In advance of the session, the Parties provided detailed mediation statements and exhibits to the mediator, which addressed the issues of liability, scienter, causation, and damages. The Parties presented expert analysis and used updated document discovery to argue the strengths of their respective arguments. The full-day mediation session ended without a settlement. In the weeks that followed, the Parties continued to negotiate through the mediator. On September 26, 2023, the Parties reached an agreement in principle to settle the Action.

The Parties subsequently negotiated the terms of the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action and related claims, in return for a cash payment by, or on behalf of, Defendants of $36,000,000 (the "Settlement Amount"), for the benefit of the Class.

<u>**ARGUMENT**</u>

## I.   THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

Federal Rule of Civil Procedure 23(e)(2) provides that a class action settlement warrants court approval if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Courts in this Circuit recognize a strong judicial policy in favor of settlements, particularly in the class action context." *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) (citations omitted*), aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (similar).

This motion is a necessary step before final approval of the proposed class action Settlement. Here, the Parties must "provide the court with information sufficient to enable it to

determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Notice of a proposed settlement is justified where the Parties show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Rule 23(e)(2) lists the core concerns for evaluating the adequacy of a settlement, which require a review of the likelihood that: (a) the class representatives and class counsel adequately represented the class; (b) the settlement was negotiated at arm's-length; (c) the relief provided to the class is adequate, taking into account: (i) the costs, risks and delays of trial and appeal; (ii) effectiveness of any proposed method of distributing relief to the class; (iii) terms of any proposed award of attorneys' fees; and (iv) any agreement required to be identified under Rule 23(e)(3)(4);[2] and (d) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

The proposed Settlement readily satisfies Fed. R. Civ. P. 23(e)(1)(B) such that the Class should receive notice of the Settlement. Additionally, the proposed notice program meets the requirements of Rule 23(c)(2)(B), Local Rule 23.1, the PSLRA, and due process.

---

[2] Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement in connection with a proposed settlement. Here, in addition to the Stipulation, on April 10, 2024, the Parties entered into a confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement"). The Supplemental Agreement sets forth the conditions under which Defendants have the discretion to terminate the Settlement if requests for exclusion from the Class exceed a certain agreed-upon threshold. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. As is standard in securities settlements, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court in camera or under seal. Other than agreements between Taro and its insurers in connection with the payment of the Settlement Amount, the Stipulation and the Supplemental Agreement are the only agreements concerning the Settlement entered into by the Parties.

## II.     NOTICE IS WARRANTED AS THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE PURSUANT TO RULE 23(E)(2)

### A.     Lead Plaintiff and Lead Counsel Adequately Represented the Class

In weighing approval, courts consider whether "the class representatives and class counsel have adequately represented the class," which involves an inquiry into any conflicts between Lead Plaintiff and the Class and the ability of Lead Counsel to conduct the litigation. Fed. R. Civ. P. 23(e)(2)(A); *see also In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 99 (S.D.N.Y. 2016) ("the adequacy requirement 'entails inquiry as to whether: (1) plaintiffs' interests are antagonistic to the interest of other members of the class; and (2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation'").

Here, there is no antagonism or conflict between Lead Plaintiff and the proposed class. Lead Plaintiff, like the other Class Members, purchased Taro common stock during the Class Period and was injured by the same alleged misstatements. Lead Plaintiff suffered substantial losses as a result of Defendants' allegedly wrongful conduct, and its interest in obtaining the largest possible recovery is, therefore, aligned with the other Settlement Class Members. *See In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764 (2d Cir. 2020) (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member").

Lead Plaintiff and Lead Counsel have more than adequately represented the Class by assiduously prosecuting the Action since its inception and achieving an excellent Settlement.  Lead Plaintiff oversaw the litigation and communicated with Lead Counsel to discuss case developments, including settlement. *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("[U]nder the PSLRA, a settlement reached under the supervision of appropriately selected Lead Plaintiffs is entitled to an even greater presumption of reasonableness"). Finally, Lead Plaintiff retained Lead Counsel,

counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. *See* ECF No. 15-4.

### B.   The Settlement Is the Result of Arm's-Length Negotiations

When assessing a settlement, a court must consider whether the "the proposal was negotiated at arms-length." Fed. R. Civ. P. 23(e)(2)(B).

Here, the Settlement was reached after arm's-length negotiations between experienced and well-informed counsel with the assistance of David Murphy of Phillips ADR, a well-respected and experienced mediator.  *See* https://phillipsadr.com/tag/david-m-murphy. *See also Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) (stating a neutral mediator supports settlement approval); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (finding that a settlement "was the product of prolonged, arms-length negotiation . . . facilitated by a respected mediator"). Accordingly, the fact that the Settlement was negotiated at arm's-length weighs in favor of approval.

### C.   The Relief Provided by the Settlement Is Adequate

#### 1.   This Settlement Is Well Within the Range of Reasonableness

The $36 million Settlement is a much higher recovery than the average $8.3 million median securities class action settlement for a case at this stage of proceedings in 2023. The $36 million Settlement recovery also represents 29% of Lead Plaintiff's maximum damages as estimated by its expert. On a percentage of recovery basis, the Settlement is ***almost seven times*** larger than the median 4.2% recovery for 2023 securities class actions settling after a ruling on a motion to dismiss, but before the filing of class certification.  *See* Bigin Decl. Ex. 2 at 15 (2023 Cornerstone Report).  This recovery is also much higher than the settlements in the other generic pharmaceutical

Rule 10(b) of the Exchange Act cases that concern the same alleged underlying price-fixing conspiracy as this action (which settled for 3.4%, 12.5%, and a range of 13.4% to 23.4% of alleged estimated damages).[3]

The Settlement is also well within the "range of reasonableness" because Plaintiffs here had significant hurdles to overcome. The court in *In re Mylan N.V. Sec. Litig.*, No. 16-CV-07926 (JPO), 2020 WL 1673811 (S.D.N.Y. Apr. 6, 2020) ("*Mylan*") (one of the related generic pharmaceutical Rule 10(b) cases) recently dismissed that case on summary judgment – including finding that a November 3, 2016 alleged corrective disclosure (the same as the second, final disclosure alleged here) revealed no new information to the market and, thus, was legally untenable. If this Court followed *Mylan* at summary judgment, Plaintiffs' maximum damages would drop to $79 million – bringing the Settlement up to a 40% recovery.

Plaintiffs also had vulnerabilities in proving Taro's liability as the alleged fraud took place largely at Taro's subsidiary Taro USA. This created an issue as to whether the parent was legally shielded from liability because of acts by a subsidiary. This corporate structure also caused issues proving scienter. Defendants would inevitably argue that they were unaware of what took place at Taro's subsidiary. Although there was overlapping senior management between Taro and Taro USA, Defendants would nonetheless have argued to the Court and jury that the alleged fraud was isolated to Taro USA and should not be attributed to Taro.

The Settlement is also well within the range of reasonableness because it provides Class Members, whose claims have been pending since 2016, with a certain and substantial tangible

---

[3] *See In re Teva Sec. Litig.*, No. 3:17-cv-00558 (SRU) (D. Conn. Apr. 28, 2022) (Dkt. No. 950-1) (3.4%) (Bigin Decl. Ex. 5 at 22); *Fleming v. Impax Labs Inc.*, No. 4:16-cv-06557-HSG (N.D. Cal. July 30, 2021) (Dkt. No. 110) (12.5%) (Bigin Decl. Ex. 3 at 10); *In re Allergan Generic Drug Pricing Sec. Litig.*, No. 2:16-cv-09449 (KSH) (CLW) (D.N.J. July 9, 2021) (Dkt. No. 223-4) (13.4%-23.4%) (Bigin Decl. Ex. 4 at 17).

recovery, without additional risk, expense, and delay. In continued litigation, expert discovery would have been protracted and it is likely that Defendants would have sought summary judgment and exclusion of vital expert testimony. There was no guarantee that the Class would prevail against Defendants' challenges and, even if it did, how the Court's rulings would affect damages or how the case would be presented to the jury. Moreover, the trial of the Lead Plaintiff's claims would inevitably be long and complex, and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process. Indeed, courts recognize that settlement of securities fraud cases are often reasonable because of the difficulty in proving the elements of the claims. *See*, *e.g.*, *Christine Asia Co. v. Yun Ma*, No. 15-md-02631 (CM) (SDA), 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019) ("In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (recognizing that complex securities class actions are "notably difficult and notoriously uncertain").

### 2. The Proposed Process for Distributing Relief to the Class is Effective

The method for processing Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. The Claims Administrator selected by Lead Counsel (subject to Court approval), JND, is an experienced claims administrator that will process claims under the guidance of Lead Counsel.  *See* Bigin Decl. Ex. 12 (JND Biography).

The Claims Administrator will employ a well-established protocol for the processing of claims in a securities class action. Potential class members will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by Claimants, the Claims Administrator will determine each Claimant's eligibility to

participate and calculate their respective "Recognized Claim" based on the Court-approved Plan of Allocation. *See* Stipulation ¶26. Lead Plaintiff's claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest rejection. Any claim disputes that cannot be resolved will be presented to the Court for a determination.

After the Settlement reaches its Effective Date (*see* Stipulation ¶40) and the passing of all applicable deadlines, Authorized Claimants will be issued checks. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after a reasonable period of time from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after redistribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to the Consumer Federation of America, or such other non-sectarian, not-for-profit organization serving the public interest approved by the Court. *See* Stipulation ¶27.[4]

---

[4] Consumer Federation of America ("CFA") is a non-profit, consumer advocacy organization established in 1968 to advance consumer interests through policy research, advocacy, and education before the judiciary, Congress, the White House, federal and state regulatory agencies, and state legislatures. *See generally* www.consumerfed.org. CFA has been approved as a cy pres beneficiary in several securities cases, including *In re Livent Corp. Sec. Litig.*, Case No. 190501229, Notice at 30 (Pa. Com. Pl.) (Bigin Decl. Ex. 7), *In re Broadcom Corp. Sec. Litig.*, No. 01-CV-00275-MLR, slip op. at 2 (C.D. Cal. Aug. 1, 2012) (Dkt. No. 760) (Bigin Decl. Ex. 8), and *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 12-cv-04677-YGR (N.D. Cal.) (*see* Notice mentioning CFA at 9) (Bigin Decl. Ex. 9).

### 3.  The Anticipated Attorney's Fees and Expenses Are Reasonable

As set forth in the Notice, Lead Counsel intend to request attorneys' fees of no more than 30% of the Settlement Fund and litigation expenses of no more than $395,000, which may include an application for reimbursement by the Lead Plaintiff pursuant to the PSLRA. Lead Counsel's requested fees in this case are well within the range reasonableness. The anticipated fee request is in line with awards in other securities settlements recently approved in this District. *See*, *e.g.*, *In re Sundial Growers Inc. Sec. Litig.*, No. 1:19-cv-08913-ALC, slip op. at 2 (S.D.N.Y. Oct. 6, 2022) (Carter, J.) (awarding 33% of $7 million settlement) (Bigin Decl. Ex. 6); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., et al.*, No. 1:18-cv-00299-AJN, 2022 WL 4136175, at *1 (S.D.N.Y. Feb. 14, 2022) (awarding one-third of $18 million recovery); *In re BHP Billiton Ltd. Sec. Litig.*, No. 1:16-cv-01445-NRB, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding 30% of $50 million recovery; *In re Genworth Fin., Inc. Sec. Litig.*, No. 1:14-cv-02392-AKH, slip op. at 2 (S.D.N.Y. Nov. 16, 2017) (Dkt. No. 178) (awarding 30% of $20 million recovery) (Bigin Decl. Ex. 10). The basis of Lead Counsel's fee and expense request will be detailed in the motion for final approval of fees and expenses.

### D.  Class Members Are Treated Equitably Relative to One Another

The Plan of Allocation, drafted with the assistance of Lead Plaintiff's damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Class Members equitably, as required by Rule 23(e)(2)(D). Each Authorized Claimant, including the Lead Plaintiff, will receive a distribution pursuant to the Plan of Allocation, and the Lead Plaintiff will be subject to the same formula for distribution of the Settlement as other Class Members on the same *pro rata* basis. Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013)

(approving securities class action settlement where the settlement fund would be distributed on a *pro rata* basis); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010) (same).

## III.    THE PROPOSED CLASS SATISFIES RULE 23

In determining whether to grant preliminary approval, the Court also determines whether it "will likely be able to" grant certification to the proposed Class for purposes of the Settlement at final approval. Fed. R. Civ. P. 23(e)(1)(B). The Second Circuit has long acknowledged the propriety of certifying a class for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Adv. Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014). Certification of a Class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Giant Interactive Grp.*, 279 F.R.D. at 158.

The proposed Settlement Class consists of all persons who purchased Taro common stock on the open market on a United States stock exchange from July 2, 2014 through November 3, 2016, both dates inclusive, and who were damaged thereby. Stipulation ¶1(f).[5]

As discussed below, the Settlement Class satisfies the requirements of Rules 23(a) and 23(b)(3) with Lead Counsel satisfying Rule 23(g).

### A.    The Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

---

[5] Excluded from the Class are Defendants, Taro Pharmaceuticals USA, Inc., Sun Pharmaceutical Industries Ltd., and Defendants' officers, directors, Immediate Family members, predecessors, successors and assigns, and any entity in which any of them have a majority ownership interest. Also excluded from the Class are any Persons who or which exclude themselves by submitting a timely and valid request for exclusion that is accepted by the Court.

and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1.    The Class Satisfies Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). "[I]n securities fraud class actions...the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) (citation omitted).

Taro is a publicly owned corporation that had over 42 million shares of common stock outstanding and listed on the New York Stock Exchange (NYSE) throughout the Class Period. Taro shares were actively traded with Class members purchasing thousands of Taro shares on the NYSE throughout the Class Period. Accordingly, the Class is sufficiently numerous as there are likely at least hundreds of Class members.

### 2.    There Are Common Questions of Law or Fact to the Class

Under Fed. R. Civ. P. 23(a)(2), members of the class must have claims that "depend upon a common contention" that "is capable of class-wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Global Brokerage, Inc.*, No. 17-CV-916 (RA) (BCM), 2021 WL 1160056, at *9 (S.D.N.Y. Mar. 18, 2021). Rule 23(a)(2) requires that "questions of law or fact" be "common to the class" – which courts have noted is a "low hurdle" that is "easily surmounted." *See also Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000) (commonality requirement "has been applied permissively by courts in the context of securities fraud litigation"). A single legal or factual question common to the class suffices. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987).

Here, the common questions of law or fact include whether: (1) Defendants violated the Exchange Act; (2) Defendants omitted and/or misrepresented material facts about Taro's competition and/or the sources of its revenues that were known and material; (3) Defendants knew or recklessly disregarded that their statements were false or misleading; (4) the market price of Taro common stock was artificially inflated during the Class Period due to the material misrepresentations and omissions complained of herein; (5) members of the Class have sustained damages and the proper measure of any such damages; and (6) the Individual Defendants were control persons of Taro. *See* Compl. ¶ 414. Thus, commonality is easily satisfied here.

### 3.      Lead Plaintiff's Claims Are Typical of Those of the Class

Fed. R. Civ. P. 23(a)(3) mandates that the claims of the representative plaintiff be typical of the claims of the class. *See In re Global Brokerage*, 2021 WL 1160056, at *6. The typicality requirement tends to "merge" with the commonality requirement, "and similar considerations guide both analyses." *Mayhew v. KAS Direct, LLC*, No. 16 CV 6981 (VB), 2018 WL 3122059, at *5 (S.D.N.Y. June 26, 2018). "Typicality does not require that the situations of the named representatives and the class members be identical." *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000) (citation omitted). A plaintiff's claim is typical if it arises from "the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

The Class here readily satisfies typicality standards because the Lead Plaintiff's claims arise from the same course of conduct by Defendants that give rise to the claims of all proposed Class members. *See* Compl. ¶ 415. Lead Plaintiff, like the other Class members, purchased Taro common stock on the open market during the Class Period, at prices inflated as a result of the same series of allegedly false and misleading statements and omissions, and suffered damages when the

truth was revealed. *See id.* ¶¶ 398-400, 415; *Roofer's Pension v. Papa* ("*Perrigo*"), 333 F.R.D. 66, 74-76 (D.N.J. 2019).

### 4. Lead Plaintiff Will Adequately Protect the Interests of the Class

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties [] fairly and adequately protect the interests of the class." The focus of the Court's inquiry is whether "plaintiff's interests are antagonistic to other class members; and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Lead Plaintiff asserts the same claims and requests the same relief as the proposed Class. Compl. ¶¶ 416, 421-35; *see also Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). Lead Plaintiff and all Class members have suffered losses from purchasing Taro common stock at artificially inflated prices. The Complaint alleges all Class members have been injured by the same misrepresentations and omissions. There is, therefore, no conflict between Lead Plaintiff and the absent members of the Class.

Finally, Lead Plaintiff engaged qualified, experienced and capable attorneys to litigate this case. Lead Counsel are highly experienced in complex class litigation, especially securities fraud actions, and have prosecuted this action vigorously. *See* ECF No. 15-4. Lead Counsel's vigorous pursuit of the Class's interests has been evidenced in the proceedings in this Court.

### B. The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Class satisfies these requirements.

### 1.    Common Questions of Law and Fact Predominate

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). In making this determination, "a court's inquiry is directed toward whether the issue of liability is common to the members of the class." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006). "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues." *Id.* This "test [is] readily met in certain cases alleging . . . securities fraud." *Amchem Prods.*, 521 U.S. at 625.

Here, "the critical issues for establishing Defendants' liability include whether the Defendants (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury. Each of these issues is susceptible of generalized proof and, accordingly, the predominance requirement of Rule 23(b)(3) is satisfied." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 1:04-cv-08144-CM, 2009 WL 5178546, at *11 (S.D.N.Y. Dec. 23, 2009).

### 2.    A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). In

general, "[s]ecurities suits easily satisfy…Rule 23(b)(3) because the alternatives are either no recourse for thousands of stockholders or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015).[6]

Each factor weighs in favor of the superiority of a class action. The members of the proposed Class have little incentive to pursue individual actions. The costs and expenses of such actions, when weighed against the individual recoveries obtainable, would be prohibitive. Compl. ¶ 417; *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 304 (S.D.N.Y. 2003). Lead Plaintiff is unaware of any individual direct shareholder actions brought by a Class member against Defendants alleging the claims at issue here. The desirability of concentrating the litigation of these claims in this forum is clear. This class action is not only an essential mechanism for investors to redress the injuries they suffered because of Taro's misconduct, but it also will help achieve the statutory objective of a fair and reliable securities market. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 n.4 (2007) ("private securities litigation is an indispensable tool with which…investors can recover their losses—a matter crucial to the integrity of domestic capital markets"). Moreover, there are thousands of Class members (Compl. ¶ 413) and "[l]itigating each case separately would be wasteful." *In re Scor Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 579 (S.D.N.Y. 2008). It would also "risk disparate results among those seeking redress." *Id*. Finally, since this is a request for class certification only for purposes of settlement,

---

[6] Courts in other generic pharmaceutical class certification decisions have agreed.  *See Perrigo*, 333 F.R.D. at 78 ("class adjudication in this forum is appropriate to ensure consistency in adjudication and to prevent the possibility of conflicting outcomes that may be rendered on individual claims.  [T]he superiority requirement is met"); *In re Teva Sec. Litig.*, No. 3:17-cv-00557 (SRU), 2021 WL 872156, at *10 (D. Conn. Mar. 9, 2021) (finding superiority where plaintiff showed that "a class action is superior to other available methods for fairly and efficiently adjudicating this controversy, based on dispersed nature of the class").

the "[C]ourt need not inquire as to whether the case, if tried, would present management problems." *See Amchem Prods.*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)). A Class-wide resolution is superior to individual actions.

### C.    Lead Counsel Is Adequate Class Counsel

Fed. R. Civ. P. 23(c)(1)(B) states that any class certification order must appoint class counsel in accordance with Fed. R. Civ. P. 23(g). Bernstein Liebhard previously satisfied Rule 23(g) through its motion to be appointed Lead Counsel for the Class under the PSLRA by detailing its experience litigating securities class actions. *See* ECF Nos. 14 & 15-4). *See also* updated Bernstein Liebhard biography at Bigin Decl. Ex. 11. The Court granted the motion. *See* ECF No. 24; *see also* Rule 23(g)(1) 2003 Advisory Notes (clarifying that the mandatory elements of Rule 23(g) do not apply to PSLRA cases because that "statute provides otherwise" by requiring prior Court approval of the lead counsel to represent the class). Additionally, Bernstein Liebhard's work litigating this case and negotiating this excellent Settlement demonstrates that it will "fairly and adequately represent the interests of the class." Rule 23(g)(4). Accordingly, Lead Counsel Bernstein Liebhard is adequate to continue to serve as Class Counsel for a Settlement Class certified under Rule 23(b)(3).

## IV.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE CLASS

Rule 23(c)(2)(B) requires notice of the pendency of a class action to be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

Lead Counsel respectfully submits that the Notice and Summary Notice, as well as the Claim Form (Exhibits 1-3 to the Preliminary Approval Order filed herewith as Exhibit A to the Stipulation), are adequate and should be issued to the Class. The proposed forms of notice collectively describe the terms of the Settlement; the considerations that caused Lead Plaintiff and

Class Counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and litigation expenses that may be sought; the procedure for requesting exclusion from the Class, objecting and submitting claims; the proposed Plan of Allocation; and the date and place of the Settlement Hearing.

The Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages that would be recoverable even if Lead Plaintiff prevailed on each claim; (iii) that Lead Counsel intends to make an application for an award of attorneys' fees and expenses (including the amount of such fees and expenses determined on an average per share basis), as well as a possible request for a reimbursement award to the Lead Plaintiff;[7] (iv) the name, telephone number, and address of a representative of Lead Counsel who will be available to answer questions; and (v) the reasons why the Parties are proposing the Settlement. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

Pursuant to the Stipulation, the Claims Administrator[8] will issue notice by (i) mailing a copy of the long-form Notice to all potential Class Members who can reasonably be identified and located using information provided by Taro's transfer agent, as well as information provided by third party banks, brokers, and other nominees about their customers who may have eligible purchases; (ii) publication of the Summary Notice in *The Wall Street Journal*; and (iii) dissemination of the Summary Notice on the Internet using PR Newswire. The Notice and Claim Form will also be posted on both the Settlement website and Lead Counsel's website. Sending the

---

[7] S.D.N.Y. Local Civil Rule 23.1 is satisfied by the PSLRA requirements here because Bernstein Liebhard LLP is the sole applicant for fees from the Settlement.

[8] Lead Plaintiff also requests that the Court appoint JND Legal Administration as the Claims Administrator to provide all notices approved by the Court to the Class Members, to process Claims Forms, and to administer the Settlement. *See* JND Biography, Bigin Decl. Ex. 12.

Notice by first-class mail, combined with the publication of the Summary Notice in a major publication and posting the Notice on the Settlement website is typical of the notice provided in other class actions and satisfies the requirements of Rule 23, Local Civil Rule 23.1, the PSLRA, and due process. *See, e.g.*, *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *2 (S.D.N.Y. May 9, 2014) (authorizing notice by first-class mail and publication in Investors' Business Daily and over PR Newswire), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

Finally, in connection with preliminary approval of the Settlement, the Court must set a Settlement Hearing date, dates for mailing the Notice and publication of the Summary Notice, and deadlines for requesting exclusion from the Class, objecting, filing motions in support of final approval and attorneys' fees and expenses, and submission of Claim Forms. Lead Plaintiff proposes the following schedule that is keyed to the final approval hearing. The hearing date is the only date that the Court must schedule.

| Event | Proposed Timing |
|---|---|
| Deadline for commencing the mailing of the Notice and Claim Form to Class Members ("Notice Date") | Not later than 15 business days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice | Not later than 14 calendar days after the Notice Date |
| Deadline for filing papers in support of final approval of the Settlement, the Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms | 5 calendar days before the Settlement Hearing |

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court issue an order substantially in the form of the proposed Preliminary Approval Order: (i) preliminary approving the proposed Settlement set forth in the Stipulation; (ii) approving of the form, content and manner of providing notice to the Class; (iii) appointing JND as the claims administrator to administer the notice and claims process; and (iv) setting a date for the final Settlement Hearing.

Dated: April 15, 2024                           Respectfully submitted,

/s/ Michael S. Bigin_____
**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein
Michael S. Bigin
Joseph R. Seidman, Jr.
Adam Federer
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
bernstein@bernlieb.com
bigin@bernlieb.com
seidman@bernlieb.com
Afederer@bernlieb.com

*Lead Counsel for Lead Plaintiff and the Class*