**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER SPEAKES, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  vs.<br><br>TARO PHARMACEUTICAL INDUSTRIES, LTD., MICHAEL KALB, AND KALYANASUNDARAM SUBRAMANIAN,<br><br>      Defendants. | Case No.: 16-cv-08318-ALC-OTW<br><br>Hon. Andrew L. Carter, Jr., U.S.D.J.<br><br>Hon. Ona T. Wang, U.S.M.J. |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND <u>REIMBURSEMENT OF TIME TO LEAD PLAINTIFF</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.     LEAD COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES
FROM THE COMMON FUND CREATED BY THE SETTLEMENT ........................... 2

     A.    The Court Should Award a Reasonable Percentage of the Common Fund ........... 3

     B.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-
Recovery Method .................................................................................................. 4

     C.    The *Goldberger* Factors Confirm That the 30% Requested Fee Is Fair and
Reasonable ........................................................................................................... 6

          1.    The Time and Labor Expended by Lead Counsel Support the Requested
Fee ........................................................................................................... 6

          2.    The Magnitude and Complexity of the Litigation Support the Requested
Fee ........................................................................................................... 7

          3.    The Risks of the Litigation Support the Requested Fee .............................. 9

          4.    The Quality of Representation Supports the Requested Fee .................... 12

          5.    Second Circuit Precedent Supports That the 30% Fee Is a Reasonable
Percentage of the Total Recovery ........................................................... 13

          6.    Public Policy Considerations Support the Requested Fee ........................ 13

     D.    A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request ........ 14

II.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT .............................. 16

III.   LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD
UNDER 15 U.S.C. §78u-4(a)(4) ....................................................................... 17

CONCLUSION ..................................................................................................................... 18

i

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Athale v. Sinotech Energy Ltd.*,
  No. 11 Civ. 05831 (AJN), 2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) ........................ 10, 15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) ........................................................................................................... 3

*Blum v. Stenson*,
  465 U.S. 886 (1984) ........................................................................................................ 3, 5

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ........................................................................................................... 2

*Christine Asia Co., Ltd. v. Yun Ma*,
  No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................... 15

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
  No. 1:08-cv-03612-RJS (S.D.N.Y. Apr. 5, 2013) ........................................................... 5

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
  No. 1:12-cv-01203-VEC, 2015 WL 13639234 (S.D.N.Y. Oct. 19, 2015) ............................... 5

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .............................................................................................. 9

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*
  *Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) ......................................................................................... 6

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't, Inc.*,
  No. 1:20-cv-02031-JSR, 2021 WL 2736135 (S.D.N.Y. June 30, 2021) ................................. 17

*Cornwell v. Credit Suisse Grp.*,
  No. 08-cv-03758 (VM), 2011 WL 13263367 (S.D.N.Y. July 20, 2011) ................................. 16

*Davis v. J.P. Morgan Chase & Co.*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) .......................................................................... 3, 4, 15

*Dura Pharm. Inc. v. Broudo*,
  544 U.S. 336 (2005) ......................................................................................................... 11

*Emerson v. Mut. Fund Series Trust, et al.*,
  No. 2:17-cv-02565-SJF-SIL (E.D.N.Y. Sept. 9, 2020) ...................................................... 17

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ............................................................................... passim

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., et al.*,
  No. 1:18-cv-00299-AJN, 2022 WL 4136175 (S.D.N.Y. Feb. 14, 2022).................................. 6

*Hayes v. Harmony Gold Mining Co.*,
  509 F. App'x 21 (2d Cir. 2013) ............................................................................ 3

*Hicks v. Stanley*,
  No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................................... 3

*In re AOL Time Warner*,
  No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................. 8

*In re Beacon Assocs. Litig.*,
  No. 09 Civ. 3907 (CM), 2013 WL 2450960 (S.D.N.Y. May 9, 2013)....................................... 6

*In re BHP Billiton Ltd. Sec. Litig.*,
  No. 1:16-cv-01445-NRB, 2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019), *aff'd sub nom.*
  *City of Birmingham Ret. & Relief Sys. v. Davis*,
  806 F. App'x 17 (2d Cir. 2020) ............................................................................ 17

*In re Bisys Sec. Litig.*,
  No. 04 Civ. 3840 (JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007) .................................... 5

*In re China Sunergy Sec. Litig.*,
  No. 07 Civ. 7895(DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011)................................. 16

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014)....................................................................... 15

*In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354
  (E.D.N.Y. June 24, 2010) ................................................................................ *passim*

*In re Credit Default Swaps Antitrust Litig.*,
  No. 13md2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)..................................... 15

*In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706-RO (S.D.N.Y. July 17, 2007)............... 16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................. passim

*In re Genworth Fin., Inc. Sec. Litig.*, No. 1:14-cv-02392-AKH (S.D.N.Y. Nov. 16, 2017) .......... 5

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ................................... 12

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................... 7

*In re JP Morgan Precious Metals Spoofing Litig.*,
No, 18-cv-10356 (S.D.N.Y. May 6, 2022) ....................................................... 15

*In re JP Morgan Precious Metals Spoofing Litig.*,
No. 18-cv-10356 (S.D.N.Y. July 7, 2022) ....................................................... 15

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).................... 13

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) .............................................................. 10, 13

*In re Med. X–Ray Film Antitrust Litig.*,
No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)................................ 5

*In re Mylan N.V. Sec. Litig.*,
666 F. Supp. 3d 266 (S.D.N.Y. 2023), *aff'd sub nom.*,
*Menorah Mivtachim Ins. Ltd. v. Sheehan*,
No. 23-720-cv, 2024 WL 1613907 (2d Cir. Apr. 15, 2024) ................................ 11

*In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884 (AVC), 2007 WL 2115592 (D. Conn.
July 20, 2007)........................................................................................... 5

*In re Prothena Corp. PLC Sec. Litig.*,
No. 1:18-cv-06425 (S.D.N.Y. Oct. 28, 2019) ................................................. 15

*In re Prothena Corp. PLC Sec. Litig.*,
No. 18-cv-6425-ALC, 2019 WL 6528672 (S.D.N.Y. Dec. 4, 2019)......................... 5

*In re Qudian Inc. Sec. Litig.*,
No. 1:17-cv-09741-JMF, 2021 WL 2328437 (S.D.N.Y. June 8, 2021) ................... 17

*In re Signet Jewelers Ltd. Sec. Litig*,
No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020 ........... 15

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) .................................................................... 7

*In re Sundial Growers Inc. Sec. Litig.*,
No. 1:19-cv-08913-ALC (S.D.N.Y. Oct. 6, 2022) .......................................... 5, 6

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)...................................................... 2, 4, 9, 16

*In re Tenaris S.A. Sec. Litig.*,
   No. 18-CV-7059(KAM)(SJB), 2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ......................... 6

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .............................. 2, 9

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................................................... 4

*Johnson v. Brennan*,
   No. 10 Civ. 4712(CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) .................................. 14

*Landmen Partners, Inc. v. Blackstone Grp., L.P.*,
   No. 08-cv-03601-HB-FM, 2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) .............................. 5

*Lobur v. Parker*,
   378 F. App'x 63 (2d Cir. 2010) .............................................................................................. 9

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................................... 4, 14

*Menorah Mivtachim Ins. Ltd. v. Sheehan*,
   No. 23-720-cv, 2024 WL 1613907 (2d Cir. Apr. 15, 2024) ................................................ 9, 11

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ........................................................................................................... 4, 15

*Parker v. Time Warner Entm't Co., L.P.*,
   631 F. Supp. 2d 242  (E.D.N.Y. 2009), *aff'd sub nom.*
   *Lobur v. Parker*,
   378 F. App'x 63 (2d Cir. 2010)  ............................................................................................. 9

*Pearlstein v. BlackBerry Ltd.*,
   No. 13 Civ. 7060 (CM) (KHP), 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) .................... 10

*Savoie v. Merchs. Bank*,
   166 F.3d 456 (2d Cir. 1999) ................................................................................................... 4

*Sewell v. Bovis Lend Lease, Inc.*,
   No. 09 Civ. 6548(RLE), 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ................................. 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................................... 3

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2015) ..................................................................................................... 3

**Statutes**

15 U.S.C. §78u-4(a)(4) ................................................................................................ 17

15 U.S.C. §78u-4(a)(6) .................................................................................................. 4

## PRELIMINARY STATEMENT

Bernstein Liebhard LLP, Lead Counsel for Lead Plaintiff City of Atlanta Firefighters Pension Fund ("Atlanta Firefighters") and the Class, negotiated a $36,000,000 cash settlement for this Action.[1] The proposed Settlement recovers 29% of Lead Plaintiff's estimate of maximum damages for the Class, which is exceptional for a securities class action settlement. This result is even more outstanding when considering the imminent risks and costs attendant to further, protracted litigation. Accordingly, Lead Counsel requests payment of the following fees and expenses from the Settlement Fund: (i) an award of attorneys' fees in the amount of 30% of the Settlement Fund; (ii) payment of litigation expenses incurred in prosecuting and settling the Action, in the amount of $356,797, and (iii) reimbursement of the Lead Plaintiff's costs, in the amount of $2,600, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") (along with interest earned on such amounts at the same rate as earned by the Settlement Fund while deposited in the Escrow Account). *See* Bigin Decl. Ex. 6 (Court-approved Notice at 4).

As detailed in the accompanying Bigin Declaration, it is respectfully submitted that Lead Counsel achieved the Settlement through its skill, experience, and effective advocacy. Lead Counsel's seven and half years of work on behalf of the Class has been without compensation of any kind, as a fee has been wholly contingent upon the result achieved. A 30% attorneys' fee award for this Action is fair and reasonable considering, among other things: (i) the outstanding result achieved by Lead Counsel for the Class; (ii) Lead Counsel's time spent prosecuting the Action; (iii) the

---

[1] All capitalized terms used herein that are not otherwise defined shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated as of April 10, 2024 (the "Stipulation," ECF No. 101-1) or in the Declaration of Michael S. Bigin in Support of Motion for Final Approval of Settlement and Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Reimbursement of Time to Lead Plaintiff (the "Bigin Declaration" or "Bigin Decl."), filed herewith.

complexities, risks faced, and Lead Counsel's work performed during the litigation; (iv) a 30% fee award is supported by fee awards within the Second Circuit in comparable cases, and a lodestar cross-check confirms a 30% fee is reasonable; and (v) public policy favors reasonable contingency fees to compensate counsel for the risks of litigating on behalf of a class.

Additionally, Lead Counsel advanced expenses necessary for litigating this Action that are appropriate to be reimbursed from the Settlement Fund. The Notice provided an estimate of the Litigation Expenses at $395,000 and the Litigation Expenses sought are less than this estimate, even including Lead Plaintiff's request for reimbursement of its time spent representing the Class.

For the reasons set forth herein, and in the Bigin Declaration, Lead Counsel respectfully submits that the attorneys' fees and expenses requested are fair and reasonable and should be approved. This request has been approved by the Lead Plaintiff and there is currently no objection by any Class Member.

## ARGUMENT

## I. LEAD COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND CREATED BY THE SETTLEMENT

The Supreme Court and Circuit Courts across the country have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Courts recognize that awards of attorneys' fees from a common fund "encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes,"[2] and discourage

---

[2] *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *accord In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007).

misconduct of a similar nature. Indeed, the Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 313 (2007). Compensating counsel for the risks they take in bringing these actions is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provided "a most effective weapon in the enforcement' of the securities laws and are a necessary supplement to [SEC] action").

### A.    The Court Should Award a Reasonable Percentage of the Common Fund

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained for the Class. The Supreme Court has indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (noting "a reasonable fee is based on a percentage of the fund bestowed on the class"). The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2015) (the percentage-of-the-fund method is preferred means to determine a fee because it "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation"); *Hayes v. Harmony Gold Mining Co*., 509 F. App'x 21, 24 (2d Cir. 2013) ("[T]he prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class"); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 183-85 (W.D.N.Y. 2011); *In re Comverse Tech., Inc. Sec. Litig*., No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010); *Savoie v. Merchs.*

*Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used").

The percentage approach also recognizes that the quality of counsel's work is measured best by the results achieved and is most consistent with the system typically used in the marketplace to compensate attorneys in non-class contingency cases. *See, e.g., Davis*, 827 F. Supp. 2d at 184 (the "advantages of the percentage method . . . are that it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made, and that it is consistent with the system typically used by individual clients to compensate their attorneys"). Additionally, the PSLRA, which governs this Action, specifies that "[t]otal attorneys' fees and expenses awarded . . . not exceed a *reasonable percentage* of the amount of any damages and prejudgment interest actually paid to the class," thus also supporting the use of the percentage-of-recovery method. 15 U.S.C. §78u-4(a)(6). Courts have concluded that, in using this language, Congress expressed a preference for the percentage-of-recovery method, rather than the lodestar method, in determining attorneys' fees in securities class actions. *See, e.g., Telik*, 576 F. Supp. 2d at 586; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002).

### B.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-Recovery Method

The Supreme Court has long recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were offering their services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and often amount to 33.33% of the recovery. *See Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers") (Brennan, J., concurring).

Lead Counsel's requested 30% fee is consistent with many fee awards in this District in securities class action settlements. *See*, *e.g.*, *In re Prothena Corp. PLC Sec. Litig.*, No. 18-cv-6425-ALC, 2019 WL 6528672, at *1-2 (S.D.N.Y. Dec. 4, 2019) (Carter, J.) (awarding 30% fee on $15.75 million recovery) (Bigin Decl. Ex. 12); *In re Genworth Fin., Inc. Sec. Litig.*, No. 1:14-cv-02392-AKH, slip op. at 2 (¶ 3 and 6(a)) (S.D.N.Y. Nov. 16, 2017) (Dkt. No. 178) (awarding 30% of $20 million recovery) (Bigin Decl. Ex. 7); *Citiline Holdings, Inc. v. iStar Fin. Inc*., No. 1:08-cv-03612-RJS, slip op. at 1 (¶ 3) (S.D.N.Y. Apr. 5, 2013), Dkt. No. 127 (awarding 30% of $29 million recovery) (Bigin Decl. Ex. 8); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, No. 1:12-cv-01203-VEC, 2015 WL 13639234, at *4 (S.D.N.Y. Oct. 19, 2015) (awarding 30% of $33 million settlement); *In re BHP Billiton Ltd. Sec. Litig.*, No. 1:16-cv-01445-NRB, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding 30% of $50 million recovery), *aff'd sub nom. City of Birmingham Ret. & Relief Sys. v. Davis*, 806 F. App'x 17 (2d Cir. 2020); *In re Bisys Sec. Litig*., No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *1-2 (S.D.N.Y. July 16, 2007) (30% of $65.87 million settlement); *see also In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884 (AVC), 2007 WL 2115592, at *4 (D. Conn. July 20, 2007) (30% awarded on $80 million settlement).

In fact, courts in this Circuit routinely approve larger fee awards of 33% in securities class action settlements. *See*, *e.g. Landmen Partners, Inc. v. Blackstone Grp., L.P*., No. 08-cv-03601-HB-FM, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (awarding 33.33% of $85 million recovery); *In re Med. X–Ray Film Antitrust Litig*., No. CV-93-5904, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (awarding 33 1/3% of $39.36 million after concluding such an award is "well within the range accepted by courts in this circuit"); *In re Sundial Growers Inc. Sec. Litig.*, No. 1:19-cv-08913-ALC, slip op. at 2 (S.D.N.Y. Oct. 6, 2022) (Carter, J.) (Bigin Decl. Ex. 9) (awarding 33% of $7 million settlement); *In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059(KAM)(SJB), 2024

WL 1719632, at *10 (E.D.N.Y. Apr. 22, 2024) (awarding 33.33% of $9.5 million settlement); *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., et al.*, No. 1:18-cv-00299-AJN, 2022 WL 4136175, at *1 (S.D.N.Y. Feb. 14, 2022) (awarding 33.33% of $18 million recovery); *In re Beacon Assocs. Litig.*, No. 09 Civ. 3907 (CM), 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013) ("In this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund").

Accordingly, the requested fee is reasonable and comparable to fees awarded in similar cases.

### C. The *Goldberger* Factors Confirm That the 30% Requested Fee Is Fair and Reasonable

The Second Circuit has repeatedly held that the following *Goldberger* factors are the appropriate criteria to consider when reviewing a request for attorneys' fees in a common-fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. These factors, addressed below, support approval of the requested fee.

### 1. The Time and Labor Expended by Lead Counsel Support the Requested Fee

In the seven and a half years since this case was filed, Lead Counsel has dedicated thousands of hours and substantial resources prosecuting these claims. Lead Counsel's efforts included an extensive and thorough investigation necessary to prepare the Complaint, which included interviewing former Taro employees and working with an antitrust expert, who reviewed years of price movements for various Taro drugs to determine possible collusive pricing. Bigin Decl. ¶¶ 5, 6, 49. Lead Counsel also briefed and substantially defeated Defendants' motions to dismiss; conducted a review of millions pages of documents produced by Taro; reviewed deposition transcripts from the

MDL; drafted a class certification motion, which, together with a draft of a supporting expert report, was provided to the mediator; consulted extensively with a damage and causation expert; prepared detailed mediation submissions on the issues of falsity, scienter, causation, and damages, and carefully reviewed Taro's mediation submissions; attended a full-day mediation on August 2, 2023 with David Murphy of Phillips ADR; and conducted extensive follow-up negotiations until the settlement was reached on September 26, 2023, after which, Lead Counsel has moved to have the Settlement approved by the Court. *Id*. ¶ 49.

To obtain a successful Settlement, Lead Counsel devoted a significant amount of time and resources to this Litigation. Specifically, Lead Counsel spent 7,723.88 hours prosecuting this case. *See* Bigin Decl. Ex. 14. This time and effort confirm that the fee requested here is reasonable.

### 2. The Magnitude and Complexity of the Litigation Support the Requested Fee

Courts have long recognized that securities class actions are "'notably difficult and notoriously uncertain.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (citing *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)); *see In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (same). This Action was no exception. It raised complex legal issues including: (i) unique factual issues surrounding Taro and its subsidiary Taro (USA) and whether a foreign parent (Taro) could be held liable for the acts of its subsidiary; (ii) issues of antitrust law interacting with securities laws; (iii) implications of criminal investigations and deferred prosecutions; and (iv) coordinating with the MDL Action, all of which magnified the difficulty of proving liability.

Moreover, Lead Counsel had to simultaneously litigate two highly complex cases: an antitrust action and a securities fraud class action. The violations of Section 10(b) were predicated on Lead Plaintiff proving that Taro committed illegal price-fixing on enough of its drugs that material

amounts of Taro's revenue were illicit, making certain representations about Taro's revenue false or misleading. Lead Counsel, assisted by its antitrust expert, reviewed and analyzed thousands of pages of spreadsheets of weekly pricing data and was able to successfully allege price fixing against seven drugs using antitrust "plus factors" to show likely collusion. Bigin Decl. ¶¶ 5, 6, 18, 49.  Lead Counsel also evaluated the collusive effects on the Company's revenues, sales, and Defendants' SEC statements.  *See* ECF No. 61 (decision denying, in part, Defendants' motion to dismiss). After sustaining the Complaint, Lead Counsel reviewed millions of pages of documents, including tens of thousands of pages of multiple drug pricing spreadsheets, and marshalled the relevant facts. *Id.* ¶¶ 18, 49. Sorting through the drug pricing information for the Class Period was a huge undertaking because, as assistant Attorney General Joseph Nielsen stated, "this is most likely the largest cartel in the history of the United States" when considering "the volume of drugs in the schemes" and the "total number of companies involved." *See* https://www.washingtonpost.com/business/economy/investigation-of-generic-cartel-expands-to-300-drugs/2018/12/09/fb900e80-f708-11e8-863c-9e2f864d47e7_story.html.

Further, the elements of loss causation and damages are always complicated in securities class actions, and involved particularly complicated legal and economic issues here. *See In re AOL Time Warner*, No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages"). While discussed below as risks to the litigation, the evaluation of the economic impact of the alleged fraud and whether there was any loss causation was a focus of factual and expert analysis. Thus, the Action's magnitude and complexity support the conclusion that the requested fee is fair and reasonable.

### 3.    The Risks of the Litigation Support the Requested Fee

The risks undertaken in the Action are often considered the most important *Goldberger* factor. *See, e.g.*, *Comverse*, 2010 WL 2653354, at *5; *Telik*, 576 F. Supp. 2d at 592. The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).  When considering the reasonableness of attorneys' fees in a contingency action, the Court should consider the risks of the litigation at the time the suit was brought. *See Goldberger*, 209 F.3d at 54-55; *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 276 (E.D.N.Y. 2009) (the court should consider "'the contingent nature of the expected compensation'"and the "'risk of non-payment viewed as of the time of the filing of the suit'"), *aff'd sub nom. Lobur v. Parker*, 378 F. App'x 63 (2d Cir. 2010).

Lead Counsel undertook this case on a wholly contingent basis, knowing that the Action could last for years and would require substantial attorney time and significant expenses with no guarantee of compensation. Bigin Decl. ¶ 48. Lead Counsel then litigated this case for seven and half years, risking any compensation for its work on behalf of the Class. Indeed, "[t]here are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despitetheir diligence and expertise." *Veeco*, 2007 WL 4115808, at *6; *see also Menorah Mivtachim Ins. Ltd. v. Sheehan*, No. 23-720-cv, 2024 WL 1613907, at *2 (2d Cir. Apr. 15, 2024) (affirming summary judgment of a similar securities case against Mylan).  Lead Counsel's assumption of a full contingency-fee risk strongly supports the reasonableness of the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *27 ("the risk associated with a case undertaken on a contingent fee basis is

an important factor in determining an appropriate fee award"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("[t]here was significant risk of non-payment in this case, and Lead Counsel should be rewarded for having borne and successfully overcome that risk").

There was also substantial risk that the Action would be fully or partially adjudicated against Lead Plaintiff following a motion for summary judgment or at trial. For example, Plaintiffs faced hurdles in proving scienter. *See, e.g., Pearlstein v. BlackBerry Ltd.*, No. 13 Civ. 7060 (CM) (KHP), 2022 WL 4554858, at *5 (S.D.N.Y. Sept. 29, 2022) ("Plaintiffs face a "substantial risk involved in proving scienter, because it goes directly to a defendant's state of mind, and proof of state of mind is inherently difficult") (citing *Athale v. Sinotech Energy Ltd.*, No. 11 Civ. 05831 (AJN), 2013 WL 11310686, at *5 (S.D.N.Y. Sept. 4, 2013)). The alleged fraud took place at Taro's subsidiary, Taro USA. Defendants would inevitably argue that they were unaware of what took place at Taro's subsidiary. Although there was overlapping senior management between Taro and Taro USA, Defendants would nonetheless have argued that the alleged fraud centered on Taro USA officers and should not be attributed to Taro.

Additionally, many of Lead Plaintiff's scienter facts would need to be developed from adverse witnesses employed by Taro years ago, whose memory of events may have faded. While Taro USA cooperated with the DOJ to secure a deferred prosecution agreement, there are questions about the levels of management's culpability for securities fraud. In fact, the DOJ dismissed its case against a key alleged conspirator from the Complaint, who was a link for knowledge or price fixing at both Taro and Taro's subsidiary Taro USA. Imputing that actor's scienter to Taro USA or Taro may have been impossible and proving Taro knowingly published false statements to investors was a challenge.

There were also risks in proving that Defendants' alleged fraud caused economic loss to the Class. *Dura Pharm. Inc. v. Broudo*, 544 U.S. 336, 338 (2005) (noting a plaintiff "must prove that the . . . fraud caused an economic loss"). The issue of loss causation would have been hotly contested at summary judgment and trial. Defendants no doubt would have taken the position, supported by expert testimony, that neither of the declines in the trading prices of Taro stock were attributable to the alleged revelation of previously-concealed facts about alleged price-fixing.

Indeed, the Second Circuit recently affirmed the lower court's summary judgment dismissal finding that one of the disclosures relied on by the Class here (the November 2, 2016 Bloomberg Article) could not have caused actionable losses. *See In re Mylan N.V. Sec. Litig.*, 666 F. Supp. 3d 266, 326 (S.D.N.Y. 2023) (the Bloomberg "article reported on an ongoing state attorney general investigation into the generic drug market…. The Bloomberg article [merely] repackaged existing information and so is insufficient to sustain loss causation for securities fraud purposes"), *aff'd sub nom. Menorah Mivtachim Ins. Ltd. v. Sheehan*, No. 23-720-cv (2d Cir. Apr. 15, 2024) ("[a]lthough the Bloomberg article may have added new details about the investigation, overall, it was merely a negative characterization of already-public information" and could not support loss causation"), 2024 WL 1613907, at *2. If Lead Plaintiff was unable to demonstrate loss causation for the November 2, 2016 Bloomberg Article, recoverable damages as estimated by Lead Plaintiff's expert would drop to $77 million (which causes the $36 million Settlement to represent an even more outstanding 47% of recoverable damages). Accordingly, Defendants surely would have tried to capitalize on the *Mylan* holding to easily cut the Class's recovery and likely try to expand the reasoning to dismiss the entire Action.

Lead Plaintiff also faced risks in proving damages. *See In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *9 (S.D.N.Y. Dec. 19, 2014) (discussing

difficulty of proving damages in securities cases and the "real risk of no recovery"). To prevail on its Section 10(b) claims, Lead Plaintiff was required to prove that the alleged misleading statements or fraudulent scheme inflated the price of Taro's stock. Lead Counsel, with the assistance of its economics and damages expert, calculated the inflation attributable to the alleged wrongdoing – assuming every element of the Class's damages theory was accepted as correct and recoverable. If the Action were to proceed, the defense would no doubt contest each and every aspect of those assumptions and calculations. Proof of damages is a complex matter requiring expert testimony. At trial, Defendants would have challenged Lead Plaintiff's expert's methodology for calculating damages with their own. Again, the Second Circuit's affirmance of the lower *Mylan* court's finding that plaintiffs there did not demonstrate loss causation for the November 2, 2016 stock drop would have been a significant hurdle in pleading damages for that drop here.

Lead Counsel firmly believes that Lead Plaintiff's claims were meritorious. However, Defendants were represented by highly capable attorneys and the risk of a decision in favor of Defendants, whether by the Court or by a jury at trial, was significant. Lead Counsel's willingness to assume the risks with a significant commitment of time and money demonstrates that this *Goldberger* factor weighs heavily in favor of the requested fee.

### 4. The Quality of Representation Supports the Requested Fee

The quality of the representation is another important factor that supports the reasonableness of the requested fee. *Goldberger*, 209 F.3d at 50. As a result of its skill and substantial experience in the specialized field of shareholder securities litigation (*see* Bigin Decl. Ex. 15-C (Lead Counsel's firm resume)), Lead Counsel developed a strong Complaint, sustained Sections 10(b) and 20(a) claims against Defendants after litigating two motions to dismiss, worked though discovery issues, marshalled evidence, and crafted arguments with antitrust and economic experts. Lead Counsel's work yielded a strong mediation statement and its expertise was critical during settlement

negotiations. Indeed, the quality of the representation here is best evidenced by the exceptional result achieved for the Class. *See Goldberger*, 209 F.3d at 55.

Courts also recognize that the quality of opposing counsel should be taken into account in assessing the quality of Lead Counsel's performance. *See, e.g.*, *Marsh ERISA*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement"). Here, Defendants are represented by A&O Shearman f/k/a Shearman & Sterling LLP, a respected law firm, and the defense attorneys brought to bear substantial experience in securities litigation and tenacity in representing their clients. Despite this formidable opposition, Lead Counsel presented a strong case and demonstrated a commitment to vigorously prosecuting this Litigation, which enabled Lead Counsel to achieve the Settlement.

> **5.    Second Circuit Precedent Supports That the 30% Fee Is a Reasonable Percentage of the Total Recovery**

In considering the requested fee in relation to the settlement, a court will consider the fee as a percentage of the total recovery and compare it "'to fees awarded in similar securities class-action settlements of comparable value.'" *Converse*, 2010 WL 2653354, at *3 (quoting *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *19 (S.D.N.Y. Dec. 23, 2009)). As discussed above (§V.C.), the requested fee award is well within the range of fees that this and other courts in the Second Circuit have awarded in comparable securities and other complex cases. Accordingly, the fee award requested is reasonable in relation to Second Circuit precedent.

> **6.    Public Policy Considerations Support the Requested Fee**

Public policy strongly favors rewarding firms for bringing successful securities actions like this one. *Flag Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate

Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered"). Accordingly, public policy favors granting the fee and expense application here.

### D.    A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request

The Second Circuit permits courts to "cross-check" the proposed award against counsel's lodestar to confirm the fee request is reasonable. *See Goldberger*, 209 F.3d at 50. In contingency fee cases, attorney fees representing multiples of lodestar are regularly awarded to reflect the quality of the result, the contingency-fee risk, and other relevant factors. *See*, e.g., *Flag Telecom*, 2010 WL 4537550, at *26 ("'Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors'"); *Comverse*, 2010 WL 2653354, at *5 ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar"). In complex contingent litigation, "[c]ourts commonly award lodestar multipliers between two and six," *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548(RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (citing *Johnson v. Brennan*, No. 10 Civ. 4712(CM), 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) (discussion of cases with multipliers between two and six).

Here, a lodestar cross-check would also support the requested fee. Lead Counsel devoted 7,723.88 hours of attorney and staff time in prosecuting this Action, and its lodestar – derived by multiplying the hours each person worked by their current hourly rates – is $5,458,190.00.[3] *See* Bigin

---

[3] The Supreme Court and other courts have held that the use of current rates is proper to compensate for inflation and the loss of use of the funds. *See Jenkins*, 491 U.S. at 283-84; *see*

Decl. Ex. 15-A. The requested fee of 30% of the Settlement Amount represents a multiplier of 1.98 of lodestar.

The 1.98 multiplier is below the two through six multiplier range generally approved for complex litigation and lower than other multipliers found reasonable for cross-check purposes by courts in this Circuit. *See, e.g.*, *In re JP Morgan Precious Metals Spoofing Litig.*, No, 18-cv-10356 (S.D.N.Y. May 6, 2022) (Dkt. No. 99 at 22) (multiplier of 3.24) (Bigin Decl. Ex. 10) and *In re JP Morgan Precious Metals Spoofing Litig.*, No. 18-cv-10356, slip op. at 2 (¶ 2) (S.D.N.Y. July 7, 2022) (Dkt. No. 114) (fees of 33.33% of $60 million settlement) (Bigin Decl. Ex. 11); *In re Prothena Corp. PLC Sec. Litig.*, 1:18-cv-06424-ALC, 2019 WL 8586191, at *1 (S.D.N.Y. Oct. 28, 2019) (multiplier of 2.7 on 30% fee); *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (multiplier of 2.15 on $250 million settlement); *In re Credit Default Swaps Antitrust Litig.*, No. 13md2476 (DLC), 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (approving a lodestar multiple of "just over 6"); *Davis*, 827 F. Supp. 2d at 185 (multiplier of 5.3 was "not atypical" in similar cases); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (lodestar multiplier of 5 found "not unreasonable"); *Athale*, 2013 WL 11310686, at *9 (awarding fee that amounts to 5.65 multiplier, noting that counsel "should be rewarded for having reached a substantial and beneficial result prior to the Court ruling on a motion to dismiss"); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758(VM), 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011) (4.7 multiplier); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar

---

*also In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *16 n.3 (S.D.N.Y. July 21, 2020) ("The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest").

multiples of over 4 are routinely awarded by courts, including this Court"); *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706-RO, slip op. at 4 (¶ 9(f)) (S.D.N.Y. July 17, 2007) (Dkt. No. 107) (awarding "a reasonable multiplier of 10.26") (Bigin Decl. Ex. 13).

Thus, a lodestar cross-check further supports the reasonableness of 30% fee request.

## II.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT

Lead Counsel requests payment of $356,797.00 in litigation expenses, plus interest, incurred in connection with the prosecution and settlement of this litigation.

Lead Counsel's expenses are recoverable because they were reasonably incurred in pursuing the claims on behalf of the Class. *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895(DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "'for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation"'"); *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"). As detailed in Lead Counsel's fee and expense declaration, the expenses are of a type necessarily incurred in litigation and routinely charged to clients billed by the hour.  These expenses and other charges include: fees for an antitrust consultant, who performed a detailed analysis of the price changes on numerous drugs of numerous companies involved in the alleged conspiracy; fees for a damages and forensic economics expert, who assisted with damage estimates, disentangled economic effects of information, assisted with mediation, drafted the Plan of Allocation, and drafted a report to accompany Lead Plaintiff's anticipated motion for class certification; fees for mediation; fees for legal research; and  filing fees and meals. *See* Bigin Decl. ¶ 49.

The Notice informed Class Members that Lead Counsel would apply for expenses in an amount not to exceed $395,000 to be paid from the Settlement Fund. Bigin Decl. Ex. 6 (Notice at 3). The expenses requested, $356,797.00, are less than that amount. To date, no Class Member has objected to Lead Counsel's request for expenses. Accordingly, Lead Counsel's request is reasonable and should be granted.

## III.    LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD UNDER 15 U.S.C. §78u-4(a)(4)

Lead Plaintiff seeks approval for a modest award of $2,600 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class. The PSLRA allows an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). This and many other courts have approved such awards under the PSLRA to compensate class representatives for the time and effort they spent, on behalf of the class. *See, e.g.*, *In re Qudian Inc. Sec. Litig.*, No. 1:17-cv-09741-JMF, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $25,000); *City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't, Inc.*, No. 1:20-cv-02031-JSR, 2021 WL 2736135 at *1 (S.D.N.Y. June 30, 2021) (awarding $6,286.40 to lead plaintiff); *Emerson v. Mut. Fund Series Trust, et al.*, No. 2:17-cv-02565-SJF-SIL, ECF No. 109, slip op. at 4 (¶ 8) (E.D.N.Y. Sept. 9, 2020) (Dkt. No. 109) (Bigin Decl. Ex. 14 (approving awards to lead plaintiffs of amounts between $1,500 and $5,800 "related to their representation of the class"); *BHP*, 2019 WL 1577313, at *2 (approving awards of $3,148.20 and $3,257.80 to lead plaintiffs).

As set forth in the Hullender Declaration (Bigin Decl. Ex. 16), Lead Plaintiff requests reimbursement for its Fund Counsel's fees incurred in connection with the Litigation. Hullender Decl. ¶ 10 (Bigin Decl. Ex. 16). The Notice informed potential Class Members that Lead Plaintiff may seek approval for an award based on its representation of the Class included as part of the $395,000

Litigation Expense estimate. Bigin Decl. Ex. 6 (Notice at 3). To date, no Class Member has objected to this requested award. Accordingly, Lead Plaintiff's request is reasonable and should be granted.

## **CONCLUSION**

For all the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees of 30% of the Settlement Fund; $356,797.00 for litigation expenses incurred by Lead Counsel in connection with the prosecution of the Action; and $2,600 to reimburse Lead Plaintiff, pursuant to the PSLRA (along with interest earned on such amounts at the same rate as earned by the Settlement Fund while deposited in the Escrow Account).

Dated: July 19, 2024

Respectfully submitted,

/s/ Michael S. Bigin
**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein
Michael S. Bigin
Joseph R. Seidman, Jr.
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
bernstein@bernlieb.com
bigin@bernlieb.com
seidman@bernlieb.com

*Lead Counsel for Lead Plaintiff and the
Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on July 19, 2024, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.

/s/ Joseph R. Seidman, Jr.

JOSEPH R. SEIDMAN, JR.